UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                                 :
ADELHEID "HEIDI" WAUMBOLDT,                       :
                                                 :
                           Plaintiff,            :        11 Civ. 7416 (TPG)
                                                 :
           – against –                           :        **OPINION**
                                                 :
GREGORY CALLIMANOPULOS,                           :
BROKERAGE & MANAGEMENT CORP.,                     :
MARINE MANAGEMENT SERVICES,                       :
M.C.,                                            :
                                                 :
                           Defendants.           :
------------------------------------------------x

Plaintiff Adelheid Waumboldt brings this action against defendants Gergory Callimanopulos, Brokerage & Management Corporation ("B&M"), and Marine Management Services, M.C. ("MMS"). She alleges several violations of federal, state, and local law stemming from purported sexual harassment and inappropriate sexual conduct on the part of Callimanopulos. B&M and Callimanopulos (collectively referred to as "defendants"[1]) move to compel arbitration of plaintiff's claims and to dismiss the complaint.

Defendants' motion is granted, but the action will be stayed pending arbitration rather than dismissed.

## Facts

In August of 2008, plaintiff began to work for B&M as the personal and executive assistant to Callimanopulos, the chairman and owner of B&M. She

---

[1] MMC has not yet appeared in this action.

was employed in this capacity until June 2011. During the course of her employment, plaintiff alleges that Callimanopulos plied her with sexually suggestive language and requests for sex, compelled her to assist him in arranging sexual rendezvous with other women, touched her in an unwanted manner, and engaged in other such sordid behavior. Plaintiff alleges that she was terminated because she refused to reciprocate Callimanopulos' advances.

She now asserts two federal claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, three state statutory claims under New York State Human Rights law, N.Y. Exec. Law § 296, five claims under New York City Administrative Code Title 8-107, and two tort claims of assault and battery and intentional infliction of emotional distress.

*** 

As part of the hiring process at B&M, plaintiff signed various documents and agreements concerning her position. On her first day at work in August 2008, she signed a letter of employment, which contained the company policies that governed plaintiff's employment. This document contained a provision regarding the resolution of disputes by arbitration. Plaintiff alleges that when she received the letter of employment, she asked whether she should consult a lawyer regarding its terms, and she was told by the president of B&M that that would not be necessary. She then signed the letter of employment on the spot.

The provision concerning arbitration in the letter of employment was subsequently superseded by a new arbitration provision (the Dispute Resolution Agreement or "DRA") contained within a revision to the B&M

Personnel Policies Handbook.[2] Plaintiff received the DRA in October of 2008.

The complaint contains no allegations that plaintiff was pressured to assent to

the DRA, nor any allegations of any kind concerning the DRA. Indeed, it

explicitly provided for a period of ten days between receipt and

acknowledgment. Plaintiff signed the DRA on October 7, 2008.

> The DRA provides that:

>> I agree that any controversy, dispute or claim arising out of or relating to my employment with the Brokerage & Management Corporation ("B&M") shall first be attempted to be settled through good faith negotiation. If a settlement is not reached, any dispute with regard to any matter relating to my employment with or rendering services to B&M shall be resolved exclusively by one arbitrator selected in accordance with the JAMS Employment Arbitration Rules & Procedures then in effect (the "JAMS Rules"). The arbitration shall be conducted in New York City pursuant to the JAMS rules with the arbitrator applying the substantive law of the State of New York. The determination of the arbitrator, which shall be by reasoned award, shall be final and binding on the parties hereto and judgment therein may be entered in any court of competent jurisdiction sitting in New York County. Each party shall pay its own attorneys' fees and disbursements and other costs of the arbitration, which shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.* The proceeding hereunder shall be treated by the parties and the arbitrator as strictly confidential, to the full extent permitted by the JAMS Rules.

>> I acknowledge that, notwithstanding the provisions in the paragraph above, B&M may bring an action or special proceeding in any court of competent jurisdiction for the purpose of compelling me to arbitrate, seeking temporary or preliminary relief in aid of an arbitration hereunder and/or enforcing an arbitration award. I further submit to the jurisdiction of the courts located in New York, New York, for the purposes of any judicial proceeding brought in accordance with this Dispute Resolution Agreement.

---

[2] The complaint contains no allegations that explicitly concern the DRA, but plaintiff evidently possessed the document and had notice of its contents when filing her complaint, and plaintiff has not objected to the court's consideration of the document on the present motion.

**The Motion**

Defendants now move to dismiss this action and compel arbitration pursuant to the DRA. Plaintiff resists, alleging that the DRA is procedurally and substantively unconscionable. Plaintiff also argues that, even assuming the validity of the DRA as to her claims against B&M, her claims against individual defendant Callimanopulos should proceed in this court action.

**Discussion**

Under the Federal Arbitration Act ("FAA"), "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If the FAA applies to a controversy at bar, the court must "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

The Second Circuit has set out a four-part test to determine whether a cause of action involving federal claims is arbitrable. The court must determine 1) whether the parties agreed to arbitrate; 2) the scope of the agreement to arbitrate; 3) whether Congress intended for the federal claims to be arbitrable; and 4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceeding pending arbitration. See JLM Indus., Inc. v. Stotlt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).  To determine whether state-law claims are arbitrable, the court looks to the first two factors. See ACE Capital

4

Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002).

Lastly, the court applies a standard similar to summary judgment to factual

disputes that arise in a motion to compel arbitration. See Bensadoun v. Jobe-

Riat, 316 F.3d 171, 175 (2d Cir. 2003)

The first factor need not long detain the court, for plaintiff signed the

DRA on October 7, 2008, and in New York, "in the absence of fraud or other

wrongful act on the part of another contracting party, a party who signs or

accepts a written contract...is conclusively presumed to know its contents and

to assent to them." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d

Cir. 2004). Plaintiff's argument that she did not meaningfully understand the

DRA is thus unavailing.

The second factor requires the court to ascertain the scope of the DRA.

The court first asks whether its language is broad or narrow. See Louis Dreyfus

Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir.

2001). The existence of a broad arbitration agreement "creates a presumption

of arbitrability which is only overcome if it may be said with positive assurance

that the arbitration clause is not susceptible of an interpretation that covers

the asserted dispute." Smith/Enron Cogeneration Ltd. P'ship v. Smith

Cogeneration Int'l Inc., 198 F.3d 88, 99 (2d Cir. 1999).

The DRA by its terms encompasses "any dispute with regard to any

matter relating to my employment with or rendering services to B&M." The

Second Circuit has held that nearly identical language "represents the

prototypical broad arbitration provision." Oldroyd v. Elmira Sav. Bank, FSB,

134 F.3d 72, 76 (2d Cir. 1998).

Here, many of plaintiff's allegations concern events and locations one does not usually associate with work, but this fact cannot overcome the presumption of arbitratribility arising from the broadly-written DRA. Plaintiff worked as Callimanopulos' personal assistant, and such a position often entails work outside a conventional office. Thus plaintiff's claims against defendants involve disputes "with regard to any matter relating" to her employment.

As for the third factor, it is now well-established that Congress intended for Title VII claims to be arbitrable. Desiderio v. NASD, 191 F.3d 198, 205-206 (2d Cir. 1999). It is similarly well-settled that plaintiff's causes of action sounding in New York state and New York City anti-discrimination law are arbitrable. See Fletcher v. Kidder, Peabody & Co., 81 N.Y.2d 623, 638 (N.Y. 1993). So, too, are her common law tort claims. See Collins & Aikman Prods. Co. v. Buildings Sys., 58 F.3d 16, 23 (2d Cir. 1995).

The court is mindful that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). But any lingering question concerning the power of the arbitrator to fully vindicate plaintiff's federal statutory rights under the DRA has been answered by defendants' offer (submitted both before and during this litigation) to waive any provisions in the DRA that would prevent the arbitrator from awarding all the relief that this

court could provide under Title VII.

Consequently, it appears that all of plaintiff's claims against defendants are arbitrable in the absence of a ground at law or in equity for the revocation of the DRA. The court now turns to plaintiff's arguments on that score.

Plaintiff first argues that the DRA cannot be enforced because it is unconscionable. Under New York law, an "unconscionable contract is one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) (internal quotation omitted). "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." Gillman v. Chase Manhattan Bank, 537 N.Y.S.2d 787, 791 (N.Y. 1988). In other words, plaintiff must show that 1) she lacked a meaningful choice when she signed the DRA due to the overweening influence of defendants and 2) the contract terms unreasonably favor defendants. See Williams v Walker-Thomas Furniture Co., 350 F2d 445, 449 (D.C. Cir. 1965). If plaintiff makes this showing, the action will remain before the court, because arbitration cannot be compelled under an unconscionable arbitration agreement. See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003).

Plaintiff alleges that the DRA was procedurally unconscionable because she was not free to decline it lest she lose her job. However, it is not unconscionable for an employer to demand an arbitration agreement as a

7

condition of employment. <u>See</u> <u>Nayal v. HIP Network Servs. IPA, Inc.</u>, 620 F.
Supp. 2d 566, 571 (S.D.N.Y. 2009). Rather, plaintiff must show that B&M
exploited its position of power through pressure, intimidation, or like
inequitable conduct.

Plaintiff argues in her opposition brief that defendants refused to allow
her to obtain counsel to review the DRA, and that this refusal constitutes the
sort of malfeasance that warrants a finding of unconscionability. In 2008, the
DRA superseded the arbitration provision in plaintiff's letter of employment.
The complaint, however, mentions the letter of employment but does not
mention the DRA. Rather, the complaint (¶ 31) alleges that plaintiff was told
that it would not be necessary to speak with a lawyer about the letter of
employment, which contained an earlier version of the arbitration provision in
the DRA. This cannot be equated with a refusal to grant plaintiff access to
counsel to review the letter of employment. As to the DRA, the document
provided for a ten-day period for consideration. During that time, plaintiff was
free to review the document with counsel. Thus plaintiff has failed to make a
showing that the conditions surrounding the formation of the contract were
procedurally unconscionable.

Nor has plaintiff demonstrated that the terms of the DRA are
substantively unconscionable. A contract term is only substantively
unconscionable if no reasonable person would agree to it. <u>See</u> <u>Doctor's Assocs.</u>
<u>v. Jabush</u>, 89 F.3d 109, 113 (2d Cir. 1996). Even if a provision is found to be
unconscionable, it can be severed if it does not infect the entire arbitration

agreement, see Herrera v. Katz Communs., Inc., 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008), and correlatively, it can be waived by the party unfairly benefited. See Ragone v. Atlantic Video, 595 F.3d 115, 124 (2d Cir. 2010).

Plaintiff alleges that that the following clause from the DRA is substantively unconscionable: "Each party shall pay its own attorneys' fees and disbursements and other costs of the arbitration...." Plaintiff argues that this provision deprives her of her right to seek attorneys' fees under Title VII and runs afoul of the Supreme Court's suggestion in Green Tree Financial Corporation-Alabama v. Randolph that prohibitive costs can preclude arbitration. See 531 U.S. 79, 90 (2000).

Defendants, however, have waived these provisions by offering to advance plaintiff's costs and to empower the arbitrator to award all the relief available in this court. This action disposes of plaintiff's argument concerning substantive unconconscionability.

Plaintiff finally argues that since Callimanopulos is not a party to the DRA, her claims against him can go forward in this court even if she is compelled to arbitrate her claims against B&M. However, employees or agents of an entity that is a party to an arbitration agreement are protected by that agreement where claims asserted against the individuals arise out of their relationship to the entity. Campaniello Imports, Ltd. v. Saporiti Italia S.P.A., 117 F.3d 655, 668-669 (2d Cir. 1997).

While plaintiff alleges that Callimanopulos in not an employee of B&M, the complaint expressly states that he is the owner and chairman of B&M. It

would appear that an owner and chairman of an entity is arguably more closely associated with that entity than a standard employee and thus can surely obtain arbitration when claims concerning his position are asserted against him.

Many of the claims against Callimanopulos are of a personal nature, but plaintiff was hired as his personal and executive assistant, and Callimanopulos dealt with plaintiff in his capacity as her superior. If Callimanopulos abused his position, he should be held accountable for his actions, but his actions nonetheless related the plaintiff's employment and are thus subject to arbitration under the DRA.

In summary, the court holds that all of plaintiff's claims against defendants B&M and Callimanopulos are subject to arbitration. In these circumstances, the court may dismiss the case or stay it pending arbitration. See Alemac Ins. Servs., Inc. v. Risk Transfer, Inc., No. 03 Civ. 1162, 2003 U.S. Dist. LEXIS 26764, at *3 (S.D.N.Y. Aug. 28, 2003). Since there may be court matters following the arbitration, the court will stay the claims against B&M and Callimanopulos pending the outcome of arbitration.

## Conclusion

For the foregoing reasons, the motion of B&M and Callimanopulos to compel arbitration is granted and the action against them stayed pending arbitration.

SO ORDERED.

Dated:  New York, New York
        August 20, 2012



Thomas P. Griesa
U.S. District Judge